# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

JOLEEN YOUNGERS, as Personal
Representative of the Estate of Susana Rojo,
TODD LOPEZ, as Personal Representative of the
Estate of Arnoldo Rojo, and EDUARDO ROJO,
as Next Friend of D.R., a minor,

       Plaintiffs,

v.                                 No. 1:19-cv-01203-JCH-SCY

ATF TRANSPORT, INC., J.B. HUNT
TRANSPORT, INC., and BENGAL BUILDING
CORP.,

       Defendants,

and

KRISTINA MARTINEZ, as Personal Representative
of Jose Apodaca, Deceased, and JUANA APODACA,
GUSTAVO APODACA, and EVANGELINA
APODACA, individually,

       Intervenor-Plaintiffs,

v.

ATF TRANSPORT, INC., and J.B. HUNT
TRANSPORT, INC.,

       Defendants.

## MEMORANDUM OPINION AND ORDER OF REMAND

This matter is before the Court on motions to remand filed by Plaintiffs Joleen Youngers,

as personal representative of the estate of Susana Rojo, Todd Lopez, as personal representative

of the estate of Arnoldo Rojo, and Eduardo Rojo, as next friend of D.R. (Plaintiffs); and

Intervenor-Plaintiffs Kristina Martinez, personal representative of the estate of Jose Apodaca,

and Juana Apodaca, Gustavo Apodaca and Evangelina Apodaca (Intervenors). *See* ECF Nos. 8 and 9. In their remand motions, Plaintiffs and Intervenors also moved for attorneys' fees to recover costs for time spent litigating against removal. After carefully considering the motions, briefs, and relevant law, the Court concludes that Plaintiffs' and Intervenors' motions to remand will be granted, but their motions for attorneys' fees and costs will be denied.

## I.   BACKGROUND

The relevant facts of this case arise from a multi-vehicle accident that tragically killed four people. On March 24, 2019, Defendant ATF Transportation Inc.'s (ATF) driver, Sean White, drove a tractor-trailer across the center of an interstate in New Mexico, striking an oncoming vehicle occupied by Susana and Arnoldo Rojo and their minor daughter D.R. This collision created another collision with a vehicle occupied by Jose Apodaca, a professional driver who was operating the vehicle on behalf of his employer, Defendant Bengal Building Corporation (Bengal). All three vehicles became engulfed in flames. White, Apodaca, Susana and Arnoldo lost their lives, while D.R. was seriously injured. At the time of the collision, ATF and White were transporting property for Sigma Corporation (Sigma), who is not a party to this case.

On March 28, 2019, Plaintiffs filed suit in the First Judicial District Court of New Mexico. They contended that Defendant J.B. Hunt Transport, Inc., (J.B. Hunt), "and/or" ATF "operat[ed] as a motor carrier and were transporting a load" driven by White, and that White was J.B. Hunt's and ATF's employee. ECF No. 1-1, 9. Plaintiffs asserted numerous state law causes of action against J.B. Hunt and ATF, including negligence, negligence *per se*, negligent entrustment, hiring, supervision, training, and retention, and gross negligence. Plaintiffs also sued Bengal, alleging that its driver, Jose Apodaca, contributed to their injuries by not properly maintaining control of the Bengal vehicle.

On May 29, 2019, Intervenors intervened as plaintiffs. Like the Plaintiffs, the Intervenors' complaint-in-intervention against ATF and J.B. Hunt asserted state law causes of action for various theories of negligence.

As pre-trial litigation progressed, ownership and operation of the truck driven by White became a disputed issue. ATF admitted that it operated the truck and that White was its employee.[1] J.B. Hunt, however, denied owning the truck or employing White. J.B. Hunt instead maintained that it acted as a broker between Sigma and ATF. Pre-trial discovery documents led Plaintiffs to believe that J.B. Hunt could be liable for negligently brokering the shipment. On November 20, 2019, Plaintiffs sought permission to amend their complaints to sue J.B. Hunt as a freight broker. The Intervenors likewise sought to amend their complaint after determining that J.B. Hunt "may be liable under a broker liability theory or similar theory." ECF No. 1-1, ¶ 3 at 272. On November 25, 2019, the state court granted the Plaintiffs' and Intervenors' request. Their amended complaints alleged that "in the alternative, to the extent that J B Hunt was acted in any capacity as a broker," J.B. Hunt negligently failed to exercise due care in, *inter alia*, selecting, hiring, and screening AFT and/or Sean White to transport the shipment. *Id*. ¶ 32, at 240; *id*. ¶ 17, at 280 (same).

In response to the amended complaints, J.B. Hunt removed the case to this Court on December 23, 2019. Even though the amended complaints assert no federal causes of action, J.B. Hunt's removal notice claims that two statutory provisions confer federal jurisdiction, 28 U.S.C. § 1331 and 28 U.S.C. § 1441. Section 1441(a) permits the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."

---

[1] ATF's original answer described White as its employee, but ATF's current answer describes White as an independent contractor. *Compare* ECF No. 1-1, ¶ 11 at 76 *with id*. ¶ 11 at 355. The Court points out this difference but notes that it has no impact on the legal analysis.

Section 1331, the "general federal-question statute," *Michigan v. Bay Mills Indian Cmty.,* 572 U.S. 782, 787 n. 2 (2014), gives district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. According to J.B. Hunt, the Federal Aviation Administration Authorization Act (FAAAA), which forbids States to "enact or enforce a law … related to a price, route, or service of any motor carrier … or any … broker," 49 U.S.C. § 14501(c)(1), preempts state law causes of action for broker negligence. ECF No. 1 at 5. J.B. Hunt therefore contends that the Plaintiffs' and Intervenors' negligent brokering claims are truly based on federal law even though they are styled as state law causes of action.

On January 22, 2020, the Plaintiffs and Intervenors filed motions to remand, which the Court proceeds to analyze.

## II.    STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013). "Congress has granted the federal courts removal jurisdiction to hear claims initially brought in state court if the federal district court could have exercised original jurisdiction." *Garley v. Sandia Corp.*, 236 F.3d 1200, 1207 (10th Cir. 2001) (citing 28 U.S.C. § 1441(a)). "The party invoking federal jurisdiction has the burden to establish that it is proper, and there is a presumption against its existence." *Salzer v. SSM Health Care of Oklahoma Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014) (citation and internal quotation marks omitted). "Removal statutes are to be strictly construed, [ ] and all doubts are to be resolved against removal." *Fajen v. Found. Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107–09 (1941)). When assessing a remand motion, the court "must assume all of the facts set forth by plaintiff to

4

be true and resolve all uncertainties as to state substantive law in favor of the plaintiff." *Colon v. Ashby*, 314 F. Supp. 3d 116, 120 (D.D.C. 2018) (citations omitted). A district court must remand a case to state court whenever the district court lacks subject matter jurisdiction over the case. *See* 28 U.S.C. § 1447(c) ("[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.")

## III.    DISCUSSION

### A. Preemption

### 1. Legal Framework

The Court must determine whether this case was properly removed to federal court because the FAAAA completely preempts Plaintiffs' and Intervenors' negligent broker claims against J.B. Hunt. Sometimes J.B. Hunt says the claims are "expressly" preempted. Other times it refers to them as "completely" preempted. *Compare* Notice of Removal at 5 *with*, Def.'s Resp., ECF No. 15, 14-17. However, the doctrines are not the same. Before analyzing the parties' arguments, it makes sense to first describe some of the preemption doctrines given that the distinctions between them are important in the context of removal.

Without diversity jurisdiction, a district court has jurisdiction over cases in which "a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Under the well-pleaded complaint rule, if the federal question does not appear on the face of the plaintiff's complaint, there is no federal question jurisdiction. In determining whether a claim "arises under" federal law, courts examine the well-pleaded allegations of the complaint and ignore potential defenses. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).

One exception to the well-pleaded complaint rule is the doctrine of "complete preemption." *Schmeling v. NORDAM*, 97 F.3d 1336, 1339 (10th Cir. 1996). If the state claim is completely preempted by federal law, that claim is considered a federal claim arising under federal law. *Nicodemus v. Union Pacific Corp.*, 440 F.3d 1227, 1232 n.4 (10th Cir. 2006). "When the federal statute completely preempts the state-law cause of action, a claim which comes within the scope of that action, even if pleaded in terms of state law, is in reality based on federal law. The claim is then removable under 28 U.S.C. § 1441(b) ...." *Anderson*, 539 U.S. at 8; *see also Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987) ("Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.")

"There are three forms of preemption that are frequently discussed in judicial decisions—express preemption, conflict preemption, and field preemption." *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1203 n.4 (10th Cir. 2012) (citations omitted). "[F]ederal statutes can preempt state statutes either by an express statement of preemption or by implication." *Id.* (citation omitted). "Express preemption arises from explicit preemption language in the statute. Implied preemption includes field preemption or conflict preemption." *Id.*

Importantly, as a form of "ordinary defensive preemption," "express preemption cannot support federal jurisdiction because [the defensive claim] would not appear on the face of a well-pleaded complaint." *Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 238 (2d Cir. 2014) (citing *Metro. Life Ins. Co.,* 481 U.S. at 63). "The presence of a federal defense does not make the case removable, even if the defense is preemption and even if the validity of the preemption defense is the only issue to be resolved in the case." *Devon Energy*, 693 F.3d at n.4 (quoting *BLAB T.V.*

*of Mobile, Inc. v. Comcast Cable Commc'ns, Inc.,* 182 F.3d 851, 854 (11th Cir.1999)). Thus, ordinary preemption "does not render a state-law claim removable to federal court." *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1221 (10th Cir. 2011).

"On the other hand … complete preemption makes a state-law claim purely a creature of federal law, and thus removable from state to federal court from the outset." *Devon Energy*, 693 F.3d 1195 at n.4 (citations and internal quotation marks omitted); *see also Wurtz*, 761 F.3d at 238 (in contrast to ordinary preemption, "the so-called complete preemption doctrine, which is distinct from the three forms of defensive preemption, a plaintiff's state cause of action [may be recast] as a federal claim for relief, making [its] removal [by the defendant] proper on the basis of federal question jurisdiction.") (quoting *Vaden v. Discover Bank,* 556 U.S. 49, 61 (2009)) (alterations in original) (internal quotation marks and other citation omitted).

Complete preemption is a "rare doctrine" that represents an "extraordinary pre-emptive power." *Devon Energy*, 693 F.3d at 1204. Complete preemption occurs only where "a federal law not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal." *Schmeling*, 97 F.3d at 1342. The "Supreme Court has warned that complete preemption should not be 'lightly implied.'" *Devon Energy*, 693 F.3d at 1205 (quoting *Bill Johnson's Rests., Inc. v. NLRB,* 461 U.S. 731, 752 (1983) (Brennan, J., concurring)). The Court has recognized the doctrine in only three instances:  "§ 301 of the Labor Management Relations Act of 1947 ("LMRA"), § 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), and actions for usury against national banks under the National Bank Act." *Id.* at 1204-05 (citations omitted).

A claim of complete preemption "demands a two-part analysis: first, we ask whether the federal regulation at issue preempts the state law relied on by the plaintiff; and second, whether

Congress intended to allow removal in such [a] case[ ], as manifested by the provision of a federal cause of action to enforce the [federal] regulation [ ]." *Id*. at 1205 (alterations in original). In the Tenth Circuit, district courts should address the second prong first. *Id*. at 1206.

If the district court determines that complete preemption does not apply, then the district court cannot consider the merits of an express preemption defense. *Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1158 (10th Cir. 2004) ("When the doctrine of complete preemption does not apply … the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption.") (citation omitted); *Wurtz*, 761 F.3d at 239 (because complete preemption did not apply "it would be inappropriate to reach the merits of the ordinary express preemption defense.") In such a situation, the district court "lacks power to do anything other than remand to the state court where the preemption issue can be addressed and resolved." *Felix*, 387 F.3d at 1158.[2]

**2. Analysis**

With this background in mind, the Court begins its analysis by examining congressional intent. The preemptive provision of the FAAAA provides in relevant part:

> [A] State … may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier … or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

---

[2] Another exception to the well-pleaded complaint rule supporting federal jurisdiction occurs when a state law claim arises under federal law based on the presence of a federal element. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005); *Devon Energy*, 693 F.3d at 1203-04. The negligence *per se* counts of the amended complaints referred to several federal transportation regulations that arguably could present a federal question under *Grable*. However, J.B. Hunt says that it "never argued [for] or addressed" this exception, so the Court likewise does not address whether the amended complaints present a substantial federal question. ECF No. 34 at 5.

49 U.S.C. § 14501(c)(1).[3] The FAAAA also contains a so-called "safety exception." That exception provides that the FAAAA preemption clause "shall not restrict the safety regulatory authority of a State with respect to motor vehicles[.]" 49 U.S.C. § 14501(c)(2)(A).

There is no doubt that the preemption clause "expressly" preempts certain state laws. *See California Trucking Ass'n v. Su*, 903 F.3d 953, 959–60 (9th Cir. 2018) ("The FAAAA expressly preempts certain state regulation of intrastate motor carriage.") (citing 49 U.S.C. § 14501(c)(1)). Despite the FAAAA's express preemption provision, "the question remains whether Congress intended for the [FAAAA] to exert complete preemption." *Tres Lotes LLC v. BNSF Ry. Co.*, 61 F. Supp. 3d 1213, 1216 (D.N.M. 2014). Answering this question involves examining "whether Congress intended the federal statutes at issue [to] provide[ ] the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." *Christensen v. BNSF Ry. Co.*, 242 F. Supp. 3d 1186, 1191 (D. Kan. 2017) (quoting *Anderson*, 539 U.S. at 8) (alteration in original) (internal quotation marks other citation omitted).

"A federal statute can create a cause of action in one of two ways, either expressly in the text of the statute, or as a direct implication of that text." *Miller v. Bruenger*, 949 F.3d 986, 991 (6th Cir. 2020). J.B. Hunt identifies no provision of the FAAAA that creates a federal cause of action. Plaintiffs and Intervenors appear to be correct that the FAAAA does not create a federal cause of action. *See City of Rockford v. Raymond*, No. 98 C 50353, 1999 WL 218549, at *2

---

[3] J.B. Hunt occasionally refers to another preemption provision of the FAAAA, 49 U.S.C. § 14501(b). To the extent that J.B. Hunt relies on that provision, it is not applicable. Section 14501(b) "specifically limits its preemptive scope to laws related to '*intrastate* rates, *intrastate* routes, or *intrastate* services of any freight forwarder or broker.'" *Lopez v. Amazon Logistics, Inc.*, No. 3:19-CV-2424-N, 2020 WL 2065624, at *4 (N.D. Tex. Apr. 28, 2020) (citing § 14501(b)(1) (emphasis in original). No facts in the amended complaints indicate that J.B. Hunt offered intrastate rates or services or that the work route was intrastate. Section 14501(b) does not apply.

(N.D. Ill. Apr. 14, 1999) ("section 14501(c) … contains no detailed, comprehensive civil enforcement scheme providing exclusive federal remedies," and noting that "[t]he lack of specific language creating jurisdiction in the federal courts shows a lack of congressional intent to make claims under the FAAAA removable to federal court."); *see also Vargas v. Airport Terminal Servs., Inc.*, No. CV1910069PARAOX, 2020 WL 614892, at *7 (C.D. Cal. Feb. 7, 2020) ("This [c]ourt has found no circuit or Supreme Court decision that has concluded the FAAA effects complete preemption on all state law claims within its scope."); *Raaf v. UPS Ground Freight, Inc.*, No. 6:18-CV-00976-MC, 2018 WL 4609935, at *3 (D. Or. Sept. 25, 2018) ("Congress did not manifest an intent to make state law claims preempted by the FAAAA removable to federal court."); *Surplus African Foods, LLC v. Air France*, No. CR217CV7105SDWCLW, 2017 WL 10664134, at *3 (D.N.J. Nov. 30, 2017), *report and recommendation adopted*, No. CV177105SDWCLW, 2017 WL 10664145 (D.N.J. Dec. 18, 2017) ("it is hard to imagine that … the FAAAA occupies one of the few select areas of complete preemption for purposes of removal."); *Nationwide Freight Sys., Inc. v. Illinois Commerce Comm'n*, No. 12 C 2486, 2012 WL 5906538, at *3 (N.D. Ill. Nov. 26, 2012) ("By its plain language, § 14501(c) does not create a cause of action."); *Carolina Cas. Ins. Co. v. Tony's Towing, Inc.*, No. CA 11-0299-C, 2011 WL 4402147, at *4 (S.D. Ala. Sept. 22, 2011) ("it is abundantly clear that section 14501(c) does not create federal question jurisdiction.") J.B. Hunt failed to point to an FAAAA provision that vindicates the same interests as – much less expressly displaces – Plaintiffs' and Intervenors' state law claims. Therefore, federal jurisdiction does not arise from an express statutory cause of action.

In response to an order for additional briefing on the complete preemption issue, J.B. Hunt argued for the first time that Congress indicated its preemptive intent impliedly. *See Elam*

*v. Kansas City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011) ("Congress can indicate its preemptive intent … impliedly through a statute's 'structure and purpose.'") (quoting *Altria Group, Inc. v. Good,* 555 U.S. 70 (2008)). A district court must "proceed with caution before finding that a statute creates an implied cause of action." *Miller*, 949 F.3d at 991 (citation omitted). "Congress's intent to imply such a claim must be expressed in 'clear and unambiguous terms.'" *Id.* (citations omitted). J.B. Hunt explains that negligent hiring claims against freight brokers are preempted under 49 U.S.C. § 14501(c)(1) because such claims would frustrate Congress's deregulatory intent in enacting the FAAAA. Shifting to the safety exception, J.B. Hunt explains that "by excluding brokers … Congress impliedly created a federal cause of action for broker liability." ECF No. 43 at 3. J.B. Hunt's premises are as follows:

> The safety exception does not apply to claims against [J.B. Hunt] for its broker services because, unlike the preemption provision in Section 14501(c)(1), the safety exception … does not address broker services at all. This demonstrates that Congress did not … inten[d] to apply the safety exception to brokers like [J.B. Hunt]. Instead, Congress demonstrated its intent that such causes of action be maintained against brokers exclusively in federal court … while allowing claims against motor carriers to persist in state court.

*Id.* at 5-6, 8.

J.B. Hunt's arguments fail to show clear and unambiguous congressional intent to create an implied cause of action against brokers in federal court. J.B. Hunt cited no authority squarely supporting its position and its supplemental arguments are in tension with assertions made in its earlier briefs. J.B. Hunt previously argued that because the FAAAA requires motor carriers – but not freight brokers – to hold personal liability insurance, *see* 49 U.S.C. § 13906(a)(1), the absence of fiscal responsibility requirements imposed on brokers to satisfy tort judgments indicates that Congress did not intend to make brokers liable for negligent hiring claims. In

contrast, J.B. Hunt now argues that Congress did intend to make brokers liable by impliedly creating a right of action against them.

In support of its view, J.B. Hunt cites *Loyd v. Salazar*, 416 F. Supp. 3d 1290 (W.D. Okla. 2019). That case does not support or endorse J.B. Hunt's arguments. In *Loyd*, the court examined, among other things, whether a negligent hiring claim against a broker fell withing the two-prongs of the safety exception – *i.e.* whether the claim (1) constituted an exercise of a State's "safety regulatory authority," and (2) whether such a claim was "with respect to motor vehicles."  *Id.* at 1298-99. The court answered no to both. Consequently, the safety exception did not save from preemption the plaintiff's negligent brokering claim. *Id.* at 1230.

Importantly, *Loyd* never held the FAAAA impliedly created a cause of action against brokers. Rather, it held that the FAAAA preempted an analogous state law claim and dismissed the claim. A judgment of dismissal is hardly evidence of a replacement right of action for purposes of removal jurisdiction. Moreover, although the district court concluded that a complaint with similar broker negligence allegations was preempted under federal law, there is a critical difference in the procedural posture between this case and *Loyd*. The *Loyd* court already had jurisdiction over its case and was addressing only the question of whether there was ordinary preemption, not whether there was complete preemption. In contrast, the Court's analysis solely goes to the question of whether J.B. Hunt may remove to federal court a case that presents only state law claims under the "rare doctrine" of complete preemption. *Devon Energy*, 693 F.3d at 1204.

The absence of an express or implied federal cause of action under the FAAAA leads the Court to conclude that Congress did not intend for the FAAAA to serve as the basis for removal. Finally, J.B. Hunt cited no authority establishing that the FAAAA's statutory structure and

purpose "so pervasively regulate[s] its respective area that it leaves no room for state-law claims." *Devon Energy*, 693 F.3d at 1205. *Cf. Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) (explaining how ERISA's "civil enforcement mechanism is one of those provisions with such extraordinary pre-emptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.") (citation and internal quotation marks omitted). The opposite appears to be true. *See Surplus African Foods*, 2017 WL 10664134, at *3 (noting "the abundance of cases where courts have rejected complete preemption under the FAAAA.")

In summary, J.B. Hunt has failed to show an express or implied cause of action under the FAAAA. Plaintiffs' and Intervenors' motions to remand are granted. The Court does not adjudicate whether the FAAAA preempts the claims against J.B. Hunt. *See Felix*, 387 F.3d at 1158 ("When the doctrine of complete preemption does not apply … the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption."). The Court "lacks power to do anything other than remand to the state court where the preemption issue can be addressed and resolved." *Id.*

### B. Attorneys' Fees and Costs

Plaintiffs and Intervenors seek an award of fees and expenses under 28 U.S.C. § 1447(c), which allows the court to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal" when remanding a case to state court. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "Conversely, when an objectively reasonable basis exists, fees should be denied." *Id.* Although the district court retains the discretion to depart in

unusual circumstances, its "reasons for departing from the general rule should be faithful to the purposes of awarding fees under § 1447(c)." *Id.* (internal quotation marks omitted); *see id.* at 140 (discussing purposes such as deterring removals sought to prolong litigation and imposing costs on the opposing party.)

As in *Christensen*, a case with legally similar issues, the propriety of J.B. Hunt's removal "tempt[ed] the fine line that separates the objectively reasonable from the unreasonable." 242 F. Supp. 3d at 1193. The Supreme Court "has emphasized time and again that complete preemption is rare," *id.*, and that "[o]nly a few federal statutes [ ] so pervasively regulate their respective areas that they have complete preemptive force." *Hansen*, 641 F.3d at 1221. Therefore, "the doctrine's rarity should have sufficed to give a … litigant … serious pause about removing the case to a federal court." *Christensen*, 242 F. Supp. 3d at 1193. Additionally, preemption "principles are relatively well-settled and clearly expressed by [the Tenth Circuit]" *id.* and the Circuit has explained for decades that a federal cause of action is a "prerequisite" to removal in these circumstances. *Schmeling*, 97 F.3d at 1343. Given the authorities earlier discussed and cited, J.B. Hunt was on notice that the FAAAA does not provide complete preemption for purposes of removal.

Moreover, J.B. Hunt had two opportunities to correct its position. It filed a surreply arguing that Plaintiffs supposedly (the emphasis is J.B. Hunt's), "chose not to address complete preemption at all, instead electing to argue whether the preemption defense applied and whether it would provide subject matter jurisdiction," and called the distinction between ordinary and complete preemption "irrelevant." ECF No. 34, 5, 7. Yet this issue is dispositive and decides the case against J.B. Hunt. In addition, J.B. Hunt did not counter or even discuss cases cited by Plaintiffs, such as *City of Rockford* and *Surplus African Foods*, which alerted J.B. Hunt to the

fact that the FAAAA does not support removal jurisdiction. When the Court requested yet more briefing on the issue, J.B. Hunt argued for the first time that Congress impliedly created a federal cause of action against brokers. However, it cited no supporting authority, thereby falling well below its burden to show that such implied intent be expressed in "clear and unambiguous terms." *Miller*, 949 F.3d at 991. It has been the law for decades that the presence of a cause of action is a prerequisite to removal under the complete preemption doctrine. Given J.B. Hunt's failure to identify any such cause of action, the Court concludes that J.B. Hunt's removal was unreasonable.

However, the Court declines to award fees and costs. J.B. Hunt did point to one removal case in which the court held that the FAAAA completely preempts negligent brokering claims. *See Gillum v. High Standard, LLC*, No. SA-19-CV-1378-XR, 2020 WL 444371, at *6 (W.D. Tex. Jan. 27, 2020). *Gillum*'s methodology in reaching that conclusion is foreclosed by Tenth Circuit precedent. First, the district court treated as "fungible" complete preemption with ordinary preemption, without noting the difference between the doctrines or discussing the rarity of complete preemption. *Felix*, 387 F.3d at 1157. Second, it did not discuss or apply the Tenth Circuit's two-part complete preemption framework by identifying whether the FAAAA contains a federal cause of action, the presence of which is a prerequisite to removal jurisdiction. *See Schmeling*, 97 F.3d at 1343; *Devon Energy*, 693 F.3d at 1205-06. Although the Court rejects *Gillum*'s complete preemption conclusion, J.B. Hunt's citation to this case "nudges [J.B. Hunt's] removal back into objectively reasonable territory—but just barely." *Christensen,* 242 F. Supp. 3d at 1193. Plaintiffs' and Intervenors' motions for attorneys' fees and costs are denied.

## IV.    CONCLUSION

J.B. Hunt improperly removed this case because J.B. Hunt's assertion of a federal defense of preemption is insufficient to make this case arise under federal law within the meaning of 28 U.S.C § 1331. Plaintiffs' and Intervenors' motions to remand are therefore granted, but their motions for attorneys' fees and costs are denied.

**IT IS THEREFORE ORDERED that** Intervenors' Motion to Remand **(ECF No. 8)** and Plaintiffs' Motion to Remand **(ECF No. 9)** are **GRANTED**;

**IT IS FURTHER ORDERED that** Plaintiffs' and Intervenors' Motions for Attorneys' Fees and Costs as moved for in their motions to remand **(ECF Nos. 8 and 9)** are **DENIED**;

**IT IS FINALLY ORDERED that** this case is **REMANDED** to the First Judicial District Court of Santa Fe County, New Mexico.

**IT IS SO ORDERED**.


_____
SENIOR UNITED STATES DISTRICT JUDGE